UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

IN RE:

JUAN M. GOMEZ ,                       CASE NO.: 17-11733-JKO
                                      CHAPTER 11

        Debtor(s).

_____/

### MOTION TO CONFIRM NO STAY AS TO PROPERTY LOCATED AT 13412 SW 83RD AVENUE, MIAMI, FL 33156 AS SUBJECT PROPERTY IS NOT PROPERTY OF BANKRUPTCY ESTATE
*Subject Property: 13412 SW 83RD AVENUE, MIAMI, FL 33156*

> **Any interested party who fails to file and serve a written response to this motion within 14 days after the date of service stated in this motion shall, pursuant to Local Rule 4001-1(c), be deemed to have consented to the entry of an order granting the relief requested in the Motion.**

Creditor, U.S. BANK N.A., AS TRUSTEE F/B/O HOLDERS OF STRUCTURED ASSET MORTGAGE INVESTMENTS II INC., BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-3 (the "**Creditor**"), by and through undersigned counsel and pursuant to 11 U.S.C.  §362(d), Bankruptcy Rule of Civil Procedure 4001 and Local Rule 4001-1, moves this Court for relief from the automatic stay to proceed *in rem*, and states:

1.      **Summary of Motion**: The Creditor seeks relief from the automatic stay as the Debtor(s), JUAN M. GOMEZ (the "**Debtor**"), is in default under the Note and Mortgage and is not adequately protecting the Creditor and the subject property is not property of Bankruptcy estate.

2.      **Creditor's Interest**: The Debtor filed this voluntary Chapter 11 proceeding on February 13, 2017.  The Creditor is a secured creditor through the Note and Mortgage executed on January 11, 2006 in the amount of $1,000,000.00.  ***Exhibit "A."***  Currently, the principal balance due is $1,593,153.61 and the default date is 9/1/2006.  The Creditor holds a security interest in the subject property located at 13412 SW 83RD AVENUE, MIAMI, FL 33156 (the "**Property**"), more fully described as:

**LOT 2, BLOCK 1, PINECREST OAKS, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 158, PAGE 52, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY FLORIDA.**

3.    **Debtor's Intentions**:  Based on the Debtor's schedules, the Property is not listed and Debtor has no interest in the property.  Debtor transferred ownership of subject property via Quit Claim Deed on or about January 17, 2006, in OR Book 28499, Page 3284, recorded 02/21/2013. *Exhibit "B"*

4.    **Standing**: Creditor possesses standing to bring this motion and the right to foreclose by virtue of being owner and holder of the Note and Mortgage that were assigned to it.  *See Troupe v. Redner, 652 So2d 394 (Fla 2d DCA 1995),* citing *Withers v. Sandlin, 36 Fla. 619, 18 So. 856 (1896); Laing v. Gainey Builders, Inc., 184 So. 2d 897 (Fla 1st DCA 1966).*

5.    **Property Valuation**: Pursuant to the County Property Appraiser's Office in which the Property lies situate, the property is valued at $937,673.00 *See Exhibit "C"*. Pursuant to *Rule 803(8) Federal Rules of Evidence*, the property appraiser valuation is permissible.

6.    **Lack of Equity Pursuant to 11 U.S.C. §362(d)(2)(A):** As the amount due to the Creditor exceeds the Property's value, there is no equity in the Property.

7.    **Grounds for Relief**:   The Creditor maintains that cause exists pursuant to 11 U.S.C. §362(d)(1) for the automatic stay to be lifted. The Creditor's security interest in the subject property is being significantly jeopardized by the Debtors' failure to make regular payments under the subject loan documents while Secured Creditor is prohibited from pursuing lawful remedies to protect such interest. The current monthly mortgage payments are $6,790.15, which comprises of $3,377.63 principal and interest and $3,412.52 in escrows.  The Debtor is indebted to the Creditor in the amount of $1,605,101.47.

8.    **Servicer:** Select Portfolio Servicing, Inc. is servicing the loan on behalf of the Creditor. Any payments made to the Creditor must be sent to Select Portfolio Servicing, Inc., Attn: Remittance Processing, P.O. Box 65450, SALT LAKE CITY, UT 84165-0450.

9.    **Waiver of Rule 4001(a)(3):** Creditor requests that the Court waive the 14 day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001 (a)(3), so that Creditor can pursue its *in rem* remedies without further delay.

10.     A proposed Order is attached to this Motion as Exhibit "D"

**WHEREFORE,** Creditor, respectfully requests that this Court issue an Order terminating or modifying the stay as subject property is not part of the Bankruptcy estate, and for any such further relief this Court deems proper and just.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this day, March 16, 2017, a copy of the foregoing was furnished electronically and/or via first class U.S. Mail upon:

JUAN M. GOMEZ
900 S. NORTH LAKE DR.
HOLLYWOOD, FL 33019
*Debtor(s)*

JOEL S WADSWORTH ESQ.
2625 PIEDMONT RD #56-304
ATLANTA, GA 30324
*Attorney for Debtor(s)*

UNITED STATES TRUSTEE
OFFICE OF THE U.S. TRUSTEE
51 S.W. 1ST AVE. SUITE 1204
MIAMI, FL 33130
*U.S. Trustee*

SHD Legal Group P.A.
**Attorneys for Creditor**
PO BOX 19519
Fort Lauderdale, FL 33318
Phone: (954) 564-0071
Fax: (954) 564-9252
E-mail: MZaki@shdlegalgroup.com

By: /s/ Mariam Zaki
      Mariam Zaki
      Florida Bar No.18367

# MOTION FOR RELIEF EXHIBIT "A"

EMC

CFN 2009R0130309
OR Bk 26761 Pgs 4167 - 4168; (2pgs)
RECORDED 02/23/2009 12:37:51
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Prepared by and return to:
Shapiro & Fishman, LLP/Galina Boytchev
2424 North Federal Highway, Suite 360
Boca Raton, Florida 33431 Client Loan No. ██████

---

This area above this line is for the use of recording official

## ASSIGNMENT OF MORTGAGE

**Mortgage Electronic Registration Systems, Inc., as Nominee for Metrocities Mortgage, LLC,** ("Assignor"), C/O Shapiro & Fishman, LLP, 2424 North Federal Highway, Suite 360, Boca Raton, Florida 33431, in consideration from U.S. Bank, National Association, as Trustee for the Certificateholders of Structured Asset Mortgage Investments II, Inc., Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2006-3, ("Assignee"), C/O Shapiro & Fishman, LLP, 2424 North Federal Highway, Suite 360, Boca Raton, Florida 33431, has granted, bargained, sold, assigned, transferred and set over, and by these presents does grant, bargain, sell, transfer and set over unto Assignee the following described Mortgage(s) recorded in the Public Records of Miami-Dade County, State of Florida, together with the note of obligation described in said Mortgage(s), and the money due and to become, due thereon, with interest as therein provided.

Date of Mortgage: January 11, 2006
Mortgage Recording Date: April 11, 2006
Clerk's File Number: 2006-0388073
Book Number: 24415
Page Number: 2850 Original Loan Amount: 1,000,000.00
Property Address: 13412 Southwest 83rd Avenue, Miami, FL 33156

Legal Description:

LOT 2, BLOCK 1, PINECREST OAKS, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 158, PAGE 52, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

Original Mortgagors: Juan Gomez, a single man

This Assignment of Mortgage is made without recourse against Assignor.

IN WITNESS WHEREOF, Assignor has caused these presents to be executed this day of ___Jan. 16___, 2009.

Mortgage Electronic Registration Systems, Inc., as Nominee for Metrocities Mortgage, LLC

By: _____       By: _____
    Liquenda Allotey      VP                 Christine Anderson      VP

(CORPORATE SEAL)

STATE OF MN          ]
COUNTY OF Dallas ]SS.

I HEREBY CERTIFY, That on this day personally appeared before me, an officer duly authorized to administer oaths and take acknowledgements of the above referenced duly authorized signatories of ___Liquenda Allotey___ who are personally known to me and did take an oath and who are to me well known to be the persons described herein and who executed the foregoing Assignment of Mortgage and duly acknowledged before me and executed the same for the purposes therein expressed as the act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, said County and State, this __16__ day of __Jan__, 2009

*NOTARY PUBLIC
Name of Notary:
Commission NO.
My Commission Expires:

(SEAL)

JAMES C. MORRIS
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2009

## ADJUSTABLE RATE NOTE
### (LIBOR Six-Month Index (As Published in *The Wall Street Journal*)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY

JANUARY 11, 2006            SHERMAN OAKS            CALIFORNIA
      [Date]                      [City]               [State]

13412 SW 83RD AVENUE, MIAMI, FLORIDA 33156
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U S $ 1,000,000.00    (this amount is called "Principal"), plus interest, to the order of Lender   Lender is METROCITIES MORTGAGE, LLC, A LIMITED LIABILITY COMPANY
I will make all payments under this Note in the form of cash, check or money order

I understand that Lender may transfer this Note   Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder "

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid   I will pay interest at a yearly rate of        7.125 %   The interest rate I will pay may change in accordance with Section 4 of this Note

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month

I will make my monthly payments on the  1st   day of each month beginning on MARCH 1
2006    I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note   Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal   If, on FEBRUARY 1, 2036         . I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date "
I will make my monthly payments at  15301 VENTURA BLVD. SUITE D 300, SHERMAN OAKS, CALIFORNIA 91403

or at a different place if required by the Note Holder

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U S $ 6,737.19        This amount may change ** See attached Interest Only Note Addendum.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay   The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note

---

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX          Form 3520 1/01
(AS PUBLISHED IN THE WALL STREET JOURNAL)--Single Family        DocMagic *eFormas* 800-649-1362
Fannie Mae MODIFIED INSTRUMENT                                       www docmagic com
For Use in FLORIDA Only                     Page 1 of 5

FI35201 not 1 tem



## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A)  Change Dates

The interest rate I will pay may change on the 1st   day of FEBRUARY, 2011                   , and on that day every 6th     month thereafter   Each date on which my interest rate could change is called a "Change Date "

### (B)  The Index

Beginning with the first Change Date, my interest rate will be based on an Index   The "Index" is the average of interbank offered rates for six month U S   dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*   The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index "

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information   The Note Holder will give me notice of this choice

### (C)  Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000                  percentage points (      2.250 %) to the Current Index   The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0 125%)   Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments   The result of this calculation will be the new amount of my monthly payment

### (D)  Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than      13.125 % or less than      2.250 %   Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000                  percentage point(s) (     2.000 %) from the rate of interest I have been paying for the preceding 6     months   My interest rate will never be greater than      13.125 %

### (E)  Effective Date of Changes

My new interest rate will become effective on each Change Date   I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again

### (F)  Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change   The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice

## 5.  BORROWER'S RIGHT TO PREPAY  ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due   A payment of Principal only is known as a "Prepayment "   When I make a Prepayment, I will tell the Note Holder in writing that I am doing so   I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge   The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note   However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note   If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes   My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment   However, any reduction due to my partial Prepayment may be offset by an interest rate increase

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)--Single Family
Fannie Mae MODIFIED INSTRUMENT
For Use in FLORIDA Only                          Page 2 of 5

Form 3520 1/01
*DocMagic* &Parana *800 649 1362*
*www docmagic com*

F135202 not 2 mm



**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  15

calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be

5.000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)--Single Family
Fannie Mae MODIFIED INSTRUMENT
For Use in FLORIDA Only                              Page 3 of 5

Form 3520 1/01
DocMagic €Ｆａｒｍｓ 800 649 1362
www docmagic com

Fl35203 not 3 tem



## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor "Presentment" means the right to require the Note Holder to demand payment of amounts due "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid

## 11 UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note Some of those conditions read as follows

**Transfer of the Property or a Beneficial Interest in Borrower** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law Lender also shall not exercise this option if (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

## 12. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the Mortgage securing this indebtedness

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)--Single Family
Fannie Mae MODIFIED INSTRUMENT
For Use in FLORIDA Only                                    Page 4 of 5

Form 3520 1/01
DocMagic <i>e∂Rarmiss</i> 800 649 1362
www docmagic com

F135204 not 4 tem



WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)          _____ (Seal)
JUAN GOMEZ                     -Borrower                                      -Borrower


_____ (Seal)          _____ (Seal)
                               -Borrower                                      -Borrower


_____ (Seal)          _____ (Seal)
                               -Borrower                                      -Borrower



*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX                    Form 3520 1/01
(AS PUBLISHED IN THE WALL STREET JOURNAL)  Single Family         DocMagic ℰℱ𝖔𝖗𝖒𝖘 800-649 1362
Fannie Mae MODIFIED INSTRUMENT                                          www docmagic com
For Use in FLORIDA Only                    Page 5 of 5

Fl35205 not 5 trm

Without recourse pay to the order of

Metrocities Mortgage, LLC

By _____
JOSH STALLINGS
VICE PRESIDENT

Loan Number █████████

# ADDENDUM TO NOTE

This addendum is made JANUARY 11, 2006     and is incorporated into and deemed to amend and supplement the Adjustable Rate Note of the same date

The property covered by this addendum is described in the Security Instrument and located at
13412 SW 83RD AVENUE, MIAMI, FLORIDA 33156

## AMENDED PROVISIONS
In addition to the provisions and agreements made in the Note, I/we further covenant and agree as follows

## ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
**Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than    13 125 % or less than      2.250 % Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000         percentage point(s) (    2.000   %) from the rate of interest I have been paying for the preceding six (6) months  My interest rate will never be greater than      13.125 % My interest rate will never be less than       2.250 %

## UNIFORM SECURED NOTE
This Note is a uniform instrument with limited variations in some jurisdictions  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note  Some of those conditions read as follows

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

LIBOR ADDENDUM TO NOTE
FORM 1201 1-01                 Page 1 of 2             DocMagic ℰℱℴℛℳℨ 800 649 1362
www docmagic com

12011 als 1 tem

In Witness Thereof, Trustor has executed this addendum

Witness  Reina A. Colo

Borrower Signature JUAN GOMEZ                    Date  1/11/06

Borrower Signature                    Date

Borrower Signature                    Date          Borrower Signature                    Date

Borrower Signature                    Date          Borrower Signature                    Date

Borrower Signature                    Date          Borrower Signature                    Date

LIBOR ADDENDUM TO NOTE
FORM 1201 1-01                    Page 2 of 2                    DocMagic *eRemus* 800-649-1362
                                                              www docmagic com

12012 als 2 fcm

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE PROMISSORY NOTE

**Loan Number**

**Property Address** 13412 SW 83RD AVENUE, MIAMI, FLORIDA 33156

**THIS ADDENDUM** is made this 11th day of JANUARY 2006 , and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to METROCITIES MORTGAGE, LLC, A LIMITED LIABILITY COMPANY (the Lender)

**THIS ADDENDUM** supersedes Sections 3(A), 3(B), 4(C) and 7(A) of the Note None of the other provisions of the Note are changed by this Addendum

### 3   PAYMENTS
#### (A) Time and Place of Payments

I will pay interest by making payments every month for the first 120 payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues I will pay principal and interest by making payments every month thereafter for the next 240 payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments

I will make my monthly payments on the first day of each month beginning on MARCH 1, 2006 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal If, on FEBRUARY 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date "

I will make my payments at 15301 VENTURA BLVD. SUITE D 300, SHERMAN OAKS, CALIFORNIA 91403

, or at a different place if required by the Note Holder

#### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U S $ 5,937.50 This payment amount is based on the original principal balance of the Note This payment amount may change

### 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
#### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000 percentage point(s) ( 2.250 %) to the Current Index for such Change Date The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0 125%) Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance At the end of the Interest-Only Period and on each Change Date thereafter, the

INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE PROMISSORY NOTE
FORM 603E 03/03/03                    Page 1 of 2

DocMagic €Forms 800-649-1362
www docmagic com



603e11 ah

Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note  The result of this calculation will be the new amount of my monthly payment   After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments

## 7.   BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder   The amount of the charge will be        5 . 000 % of my overdue payment of interest during the Interest-Only Period, 5 . 000         % of my overdue payment of principal and interest thereafter   I will pay this late charge promptly but only once on each late payment

| | | | |
|---|---|---|---|
| _J. Gomez_ | _1/11/06_ | | |
| Borrower<br>JOAN GOMEZ | Date | Borrower | Date |
| | | | |
| Borrower | Date | Borrower | Date |
| | | | |
| Borrower | Date | Borrower | Date |

## PREPAYMENT NOTE ADDENDUM
### (Multi-State)

This Prepayment Note Addendum is made this 11th day of  JANUARY, 2006          and is incorporated into and shall be deemed to amend and supplement the Note of the same date (the "Note") made by the undersigned (the "Borrower") to evidence indebtedness to  METROCITIES MORTGAGE, LLC, A LIMITED LIABILITY COMPANY                                                    (the "Lender"), which debt is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") of the same date and covering the property described in the Security Instrument and located at
13412 SW 83RD AVENUE, MIAMI, FLORIDA 33156

(the "Property")

**Additional Covenants**  Notwithstanding anything to the contrary set forth in the Note and Security Instrument, Borrower and Lender covenant, and agree that, the provisions of the section of the Note entitled "BORROWER'S RIGHT TO PREPAY" are amended to read as follows

Subject to the Prepayment penalty provided below, I have the right to make payments of Principal at any time before they are due  A payment of Principal only is known as a "Prepayment "  A "Full Prepayment" is the prepayment of the entire unpaid Principal due under the Note   A payment of only part of the unpaid Principal is known as a "Partial Prepayment "  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note

**If, within the   36      month(s) period beginning with the date I execute the Note (the "Penalty Period"), I make a Full Prepayment, or Partial Prepayment in any twelve (12)-month period that exceeds 20% of the original Principal loan amount, I will pay a Prepayment charge as consideration for the Note Holder's acceptance of such Prepayment   The Prepayment charge will equal the amount of interest that would accrue during a six (6)-month period on the amount prepaid that exceeds 20% of the original Principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the Prepayment, unless otherwise prohibited by applicable law or regulation   No Prepayment charge will be assessed for any prepayment occurring after the Penalty Period**

Notwithstanding the foregoing, in the event of a Full Prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first  6      month(s) of the term of the Note, no Prepayment penalty will be assessed  In that event, I agree to provide the Note Holder with evidence acceptable to the Note Holder of such sale

The Note Holder will apply all Prepayments to reduce the amount of Principal that I owe under the Note However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note  If I make a Partial Prepayment, there will be no change in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes

If my Note is an Adjustable Rate Note, Partial Prepayments may reduce the amount of my monthly payment after the first interest rate Change Date following the Partial Prepayment  However, any reduction due to my Partial Prepayment may be offset by an interest rate increase

MULTI-STATE PREPAYMENT NOTE ADDENDUM
FORM 603B1 1-01                                     Page 1 of 2                          *DocMagic* 800 649 1362
                                                                                         www docmagic com

Us603n111 ab



The Note Holder's failure to collect a Prepayment charge at the time a Prepayment is received shall not be deemed a waiver of such charge   Any Prepayment charge not collected at the time the Prepayment is received shall be payable on demand

All other provisions of the Note are unchanged and remain in full force and effect

## NOTICE TO BORROWER

Do not sign this Addendum before you read it   This Addendum provides for the payment of a Prepayment charge if you wish to repay the loan prior to the date provided for repayment in the Note

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
JUAN GOMEZ                -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

MULTI-STATE PREPAYMENT NOTE ADDENDUM
FORM 603B1 1-01                          Page 2 of 2

DocMagic €₹₮₮₠₨₢₤ 800-649 1362
www docmagic com

Us603b122 xls

CFN 2006R0388073
OR Bk 24415 Pgs 2850 - 2873; (24pgs)
RECORDED 04/11/2006 11:44:55
MTG DOC TAX 3,500.00
INTANG TAX 2,000.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA



This Instrument Prepared By:

After Recording Return To:
METROCITIES MORTGAGE, LLC
15301 VENTURA BLVD. SUITE D 300
SHERMAN OAKS, CALIFORNIA 91403

——————— [Space Above This Line For Recording Data] ———————

## MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated  JANUARY 11, 2006       , together with all Riders to this document.
(B)  "Borrower" is  JUAN GOMEZ, A SINGLE MAN

Borrower is the mortgagor under this Security Instrument.
(C)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MJ 48501-2026, tel. (888) 679-MERS.
(D)  "Lender" is METROCITIES MORTGAGE, LLC

Lender is a LIMITED LIABILITY COMPANY                                    organized
and existing under the laws of CALIFORNIA
Lender's address is 15301 VENTURA BLVD. SUITE D 250, SHERMAN OAKS,
CALIFORNIA 91403

(E)  "Note" means the promissory note signed by Borrower and dated  JANUARY 11, 2006       .
The Note states that Borrower owes Lender ONE MILLION AND 00/100
                             Dollars (U.S. $ 1,000,000.00       ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
FEBRUARY 1, 2036       .
(F)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01
Page 1 of 15

DocMagic ℰℱℴ☎☎ 800-649-1362
www.docmagic.com

FD3010.1 stum 1 tem

24

(G)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H)   "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] Other(s) [specify] |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | INTEREST ONLY ADDENDUM TO RIDER, ADDENDUM TO ADJUSTABLE RIDER, PREPAYMENT RIDER |

(I)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)   "Escrow Items" means those items that are described in Section 3.

(M)   "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)   "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01
Page 2 of 15

DocMagic €Fℛ□□□□ 800-649-1362
www.docmagic.com

F130102.mzm.2.tem

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

<table>
<tr><td align="center">COUNTY</td><td align="center">of</td><td align="center">MIAMI-DADE</td><td align="right">:</td></tr>
<tr><td align="center">[Type of Recording Jurisdiction]</td><td></td><td align="center">[Name of Recording Jurisdiction]</td><td></td></tr>
</table>

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 20-5015-0550020


LOT 2, BLOCK 1, PINECREST OAKS, according to the Plat thereof
as Recorded in Plat Book 158, page 52, of the Public Records
of MIAMI-DADE County Florida.


which currently has the address of    13412 SW 83RD AVENUE

                                                     [Street]

<table>
<tr><td align="center">MIAMI</td><td></td><td>, Florida</td><td align="center">33156</td><td>("Property Address"):</td></tr>
<tr><td align="center">[City]</td><td></td><td></td><td align="center">[Zip Code]</td><td></td></tr>
</table>

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01                                              Page 3 of 15

DocMagic *eFRemins* 800-649-1362
www.docmagic.com

Fl30103.mzm 3.tem

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01                                      Page 4 of 15

*DocMagic eFrzzza 800-649-1362*
*www.docmagic.com*

FI30104 mcm 4 tem

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01                                              Page 5 of 15

DocMagic eⓇRaums 800-649-1362
www.docmagic.com

Fl30105.mzm.5.irm

Book24415/Page2854    CFN#20060388073          Page 5 of 24

of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower.  Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.

If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01                                    Page 7 of 15

*DocMagic EForms 800-649-1362*
*www.docmagic.com*

F130107.mzm.7.tem

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument; including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable. with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Property to Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the Insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01                                          Page 9 of 15

DocMagic ℰℱℴℝℳℬ 800-649-1362
www.docmagic.com

as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01
Page 10 of 15

DocMagic ℯℱℴℛℳℴ 800-649-1362
www.docmagic.com

Fl3010l0.mzm.10.tem

means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01                                            Page 11 of 15

DocMagic ℰℱℴℛℳℨ 800-649-1362
www.docmagic.com

Fl301011 mzm 11.tem

Book24415/Page2860    CFN#20060388073              Page 11 of 24

Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01    Page 12 of 15
DocMagic ℰℛunnse 800-649-1352
www.docmagic.com

FI301012 mzm. 12 tem

or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Attorneys' Fees. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
JUAN GOMEZ                      -Borrower
9220 FOUNTAIN BLUE BOULEVARD,
MIAMI, FLORIDA 33172

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

Signed, sealed and delivered in the presence of:

_____          _____
Witness Reina X. Cobo                     Witness

                                          _____
                                          Witness   Isabel

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic EFarms 800-649-1362
Form 3010 1/01                                          Page 14 of 15                    www.docmagic.com

Fl3010I4.mzm.14.txt

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

The foregoing instrument was acknowledged before me this $11$ day of January 2006
by JUAN GOMEZ

who is personally known to me or who has produced FL. Driv. lic.
as Identification.

(Type of Identification)

Signature

REINA A. COBO
MY COMMISSION #DD453792
EXPIRES: JUL 24, 2009
Bonded through 1st State Insurance

Name of No

(Seal)

Title

Serial Number, if any

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01
Page 15 of 15

DocMagic ℰℛ𝑜𝑛𝑛𝑠 800-649-1362
www.docmagic.com

Fl301015.mzm.15 tem

Loan Number ████████

Date: JANUARY 11, 2006

Property Address: 13412 SW 83RD AVENUE, MIAMI, FLORIDA 33156

**EXHIBIT "A"**

**LEGAL DESCRIPTION**

SEE PRELIMINARY TITLE REPORT

DocMagic ⊂Forms 800-649-1362
www.docmagic.com

Legal16 msc

Loan Number: ███████

## PREPAYMENT RIDER
### (Multi-State)

This Prepayment Rider is made this 11th day of JANUARY, 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to METROCITIES MORTGAGE, LLC, A LIMITED LIABILITY COMPANY (the "Lender") of the same date and covering the property described in the Security Instrument and located at
13412 SW 83RD AVENUE, MIAMI, FLORIDA 33156

(the "Property").

**Additional Covenants.** Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." A "full prepayment" is the prepayment of the entire unpaid principal due under the Note. A payment of only part of the unpaid principal is known as a "partial prepayment."

If, within the 36 month(s) period beginning with the date Borrower executes the Note (the "Penalty Period"), Borrower makes a full prepayment, or partial prepayment in any twelve (12)-month period that exceeds 20% of the original principal loan amount, Borrower will pay a prepayment charge as consideration for the Note Holder's acceptance of such prepayment. The prepayment charge will equal the amount of interest that would accrue during a six (6)-month period on the amount prepaid that exceeds 20% of the original principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the prepayment, unless otherwise prohibited by applicable law or regulation. No prepayment charge will be assessed for any prepayment occurring after the Penalty Period.

Notwithstanding the foregoing, in the event of a full prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first 6 month(s) of the term of the Note, no prepayment penalty will be assessed. In that event, Borrower agrees to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____ (Seal)    _____ (Seal)
JUAN GOMEZ             -Borrower                         -Borrower

_____ (Seal)    _____ (Seal)
                       -Borrower                         -Borrower

_____ (Seal)    _____ (Seal)
                       -Borrower                         -Borrower

PREPAYMENT RIDER - 6038B2 Multi-State
11/15/99

DocMagic ☎ 800-649-1362
www.docmagic.com

Us603b2.rln

## ADDENDUM TO ADJUSTABLE RATE RIDER

This addendum is made JANUARY 11, 2006 and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
13412 SW 83RD AVENUE, MIAMI, FLORIDA 33156

### AMENDED PROVISIONS
In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

### ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 13.125 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000 percentage point(s) ( 2.000 %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than 13.125 %. My interest rate will never be less than 2.250 %.

### TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

LIBOR ADDENDUM TO ADJUSTABLE RATE RIDER
FORM 1202 1-01        Page 1 of 2        DocMagic *800-649-1362* www.docmagic.com

12021.ala 1.rem

In Witness Thereof, Trustor has executed this addendum.

Witness  Rejur  A. Colos

Borrower Signature  JUAN GOMEZ      Date          Borrower Signature                    Date


Borrower Signature                   Date          Borrower Signature                    Date


Borrower Signature                   Date          Borrower Signature                    Date


LIBOR ADDENDUM TO ADJUSTABLE RATE RIDER
FORM 1202 1-01                    Page 2 of 2          DocMagic €Farmas 800-649-1362
                                                       www.docmagic.com

12002 ala 2 tem

MI **[redacted]**                    Loan Number: **[redacted]**

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published in *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 11th day of JANUARY, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to METROCITIES MORTGAGE, LLC, A LIMITED LIABILITY COMPANY
("Lender") of the same date and covering the property described in the Security Instrument and located at:

13412 SW 83RD AVENUE, MIAMI, FLORIDA 33156

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 7.125 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the 1st day of FEBRUARY, 2011 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                                   Page 1 of 3

*DocMagic* ℮Ɍ*ᴏʀᴍꜱ* 800-649-1362
www.docmagic.com

Us31381.rid.1 tem

**(C)   Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000                        percentage points (        2.250     %) to the Current Index.   The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.   The result of this calculation will be the new amount of my monthly payment.

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    13.125  % or less than        2.250  %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000

                             percentage points (        2.000  %) from the rate of interest I have been paying for the preceding      6        months.  My interest rate will never be greater than    13.125  %.

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date.   I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)   Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.   The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.   However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                        Page 2 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

Us31382.rid 2 tem

assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)  
JUAN GOMEZ              -Borrower

_____ (Seal)  
                        -Borrower

_____ (Seal)  
                        -Borrower

_____ (Seal)  
                        -Borrower

_____ (Seal)  
                        -Borrower

_____ (Seal)  
                        -Borrower

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX  
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)  
Single Family--Fannie Mae MODIFIED INSTRUMENT  
Form 3138 1/01                                Page 3 of 3

*DocMagic ℰₚₐₑₘₐₘ 800-849-1362*  
*www.docmagic.com*

Us31383 rid 3.wm

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE RIDER

Property Address: 13412 SW 83RD AVENUE, MIAMI, FLORIDA 33156

THIS ADDENDUM is made this 11th   day of JANUARY, 2006                    , and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as this Addendum executed by the undersigned and payable to METROCITIES MORTGAGE, LLC, A LIMITED LIABILITY COMPANY

(the Lender).

THIS ADDENDUM supersedes Section 4(C) of the Rider. None of the other provisions of the Note are changed by this Addendum.

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000                    percentage point(s) (    2.250    %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period.  If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER
FORM 603F 02/04/04                    Page 1 of 2

DocMagic e电tram 800-649-1362
www.docmagic.com

603fi ais i tem

_____ (Seal)
JUAN GOMEZ               -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER
FORM 603F 02/04/04                     Page 2 of 2

*DocMagic* *eForms* 800-649-1362
www.docmagic.com

603f2.ala.2.tem

# MOTION FOR RELIEF
# EXHIBIT "B"

CFN 2013R0141540
OR Bk 28499 Pg 3284; (1pg)
RECORDED 02/21/2013 13:59:22
DEED DOC TAX 0.60
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

This Document Prepared By and Return to:

REINA A. COBO
PRECISE TITLE SERVICES
12169 SO. DIXIE HIGHWAY
PINECREST, FLORIDA   33156
OFFICE: (305) 238-9558

Parcel ID Number: 20-5015-055-0020

Grantee #1 TIN:

# Quitclaim Deed

**This Quitclaim Deed,** Made this 17th day of   **January**   , 2006 A.D.   **Between**
**JUAN M. GOMEZ, a single man**

of the County of **Miami-Dade**   ,   State of **Florida**   , grantor,   and
**BENJAMIN JARID**

whose address is: **13412 S.W. 83RD AVENUE, MIAMI, FL 33156**

of the County of **Miami-Dade**   ,   State of **Florida**   , grantee.

**Witnesseth**   that the GRANTOR, for and in consideration of the sum of
--------------------------**TEN DOLLARS ($10)**---------------------- DOLLARS,
and other good and valuable consideration to GRANTOR in hand paid by GRANTEE, the receipt whereof is hereby acknowledged, has
granted, bargained and quitclaimed to the said GRANTEE and GRANTEE'S heirs, successors and assigns forever, the following described land, situate,
lying and being in the County of **Miami-Dade**   State of **Florida**   to wit:

LOT 2, BLOCK 1, PINECREST OAKS, ACCORDING TO THE PLAT THEREOF, AS
RECORDED IN PLAT BOOK 158, AT PAGE 52, OF THE PUBLIC RECORDS OF
MIAMI-DADE COUNTY, FLORIDA.

ALSO KNOWN AS 13412 SW 83 AVENUE, MIAMI, FL 33156

**To Have and to Hold** the same together with all and singular the appurtenances thereunto belonging or in anywise
appertaining, and all the estate, right, title, interest, lien, equity and claim whatsoever of grantor, either in law or equity, for
the use, benefit and profit of the said grantee forever.

**In Witness Whereof,** the grantor has hereunto set its hand and seal the day and year first above written.

Signed, sealed and delivered in our presence:

Printed
Witness

By: _____   (Seal)
JUAN M. GOMEZ
P.O. Address:

Printed
Witness

(Corporate Seal)

STATE OF   **Florida**
COUNTY OF **Miami-Dade**
The foregoing instrument was acknowledged before me this 17th day of   **January**   , 2006   by
**JUAN M. GOMEZ, a single man**

he is personally known to me or he has produced   **Florida driver's license**   as identification

REINA A. COBO
MY COMMISSION # DD453792
EXPIRES: JUL 24, 2009
Bonded through 1st State Insurance

Printed
Notary Public
My Commission Expires:

05-0217

Laser Generated by © Display Systems, Inc., 2005   (863) 763-5555. Form FLQCD-1

# MOTION FOR RELIEF EXHIBIT "C"



## PEDRO J. GARCIA
## MIAMI-DADE PROPERTY APPRAISER

**IMPORTANT MESSAGE**

When buying real estate property, you should not assume that property taxes will remain the same. Whenever there is a change in ownership, the assessed value of the property may reset to full market value, which could result in higher property taxes. Please use our Tax Estimator to approximate your new property taxes.

The Property Appraiser does not send tax bills and does not set or collect taxes. Please visit the Tax Collector's website directly for additional information.

| Address | Owner Name | Folio |

# SEARCH:

| 13412 SW 83 AVE | Suite | 🔍 |

## PROPERTY INFORMATION

**Folio:** 20-5015-055-0020

**Sub-Division:**
PINECREST OAKS

**Property Address**
13412 SW 83 AVE
Pinecrest, FL 33156-6610

**Owner**
BENJAMIN JARID

**Mailing Address**
13412 SW 83 AVENUE
MIAMI, FL 33156

**Primary Zone**
2100 ESTATES - 15000 SQFT LOT

**Primary Land Use**
0101 RESIDENTIAL - SINGLE FAMILY : 1 UNIT

| | |
|---|---|
| **Beds / Baths / Half** | 4 / 4 / 0 |
| **Floors** | 1 |
| **Living Units** | 1 |
| **Actual Area** | |
| **Living Area** | |
| **Adjusted Area** | 4,356 Sq.Ft |
| **Lot Size** | 17,748 Sq.Ft |
| **Year Built** | 2004 |

| Map View ▾ | Layers ▾ |

SW 134TH ST



2016 Aerial Photography        60ft

**Featured Online Tools**

| | |
|---|---|
| Comparable Sales | Glossary |
| Non-Ad Valorem Assessments | PA Additional Online Tools |
| Property Record Cards | Property Search Help |
| Property Taxes | Report Discrepancies |
| Report Homestead Fraud | Tax Comparison |
| Tax Estimator | TRIM Notice |
| Value Adjustment Board | |

## ASSESSMENT INFORMATION

| Year | 2016 | 2015 | 2014 |
|---|---|---|---|
| Land Value | $327,480 | $301,716 | $266,220 |
| Building Value | $562,142 | $568,458 | $558,918 |
| Extra Feature Value | $48,051 | $29,940 | $30,272 |
| Market Value | $937,673 | $900,114 | $855,410 |
| Assessed Value | $937,673 | $900,114 | $855,410 |

## TAXABLE VALUE INFORMATION

| | 2016 | 2015 | 2014 |
|---|---|---|---|
| **COUNTY** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $937,673 | $900,114 | $855,410 |
| **SCHOOL BOARD** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $937,673 | $900,114 | $855,410 |
| **CITY** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $937,673 | $900,114 | $855,410 |
| **REGIONAL** | | | |

| | | | |
|---|---|---|---|
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $937,673 | $900,114 | $855,410 |

## BENEFITS INFORMATION

| Benefit | Type | 2016 | 2015 | 2014 |
|---|---|---|---|---|

Note: Not all benefits are applicable to all Taxable Values (i.e. County, School Board, City, Regional).

## FULL LEGAL DESCRIPTION

PINECREST OAKS

PB 158-52 T-20926

LOT 2 BLK 1

LOT SIZE 17748 SQFT

FAU 20-5015-000-0450

OR 19313-0393 09/2000 2 (2)

COC 24415-2848 01 2006 1

## SALES INFORMATION

| Previous Sale | Price | OR Book-Page | Qualification Description | Previous Owner 1 |
|---|---|---|---|---|
| 01/17/2006 | $100 | 28499-3284 | Sales which are disqualified as a result of examination of the deed | JUAN GOMEZ |
| 01/01/2006 | $1,285,000 | 24415-2848 | Sales which are qualified | |
| 09/01/2004 | $890,000 | 22648-1561 | Sales which are qualified | |
| 09/01/2000 | $275,000 | 19313-0393 | Deeds that include more than one parcel | |

For more information about the Department of Revenue's Sales Qualification Codes.

2016   2015   2014

## LAND INFORMATION

| Land Use | Muni Zone | PA Zone | Unit Type | Units | Calc Value |
|---|---|---|---|---|---|
| GENERAL | EU-M | 2100 - ESTATES - 15000 SQFT LOT | Square Ft. | 15,000.00 | $300,000 |
| GENERAL | EU-M | 2100 - ESTATES - 15000 SQFT LOT | Square Ft. | 2,748.00 | $27,480 |

## BUILDING INFORMATION

| Building Number | Sub Area | Year Built | Actual Sq.Ft. | Living Sq.Ft. | Adj Sq.Ft. | Calc Value |
|---|---|---|---|---|---|---|
| 1 | 1 | 2004 | | | 4,356 | $562,142 |

## EXTRA FEATURES

| Description | Year Built | Units | Calc Value |
|---|---|---|---|
| Wood Fence | 2004 | 250 | $3,640 |
| Patio - Brick, Tile, Flagstone | 2004 | 900 | $8,811 |
| Pool 8' res BETTER 3-8' dpth, tile 650-1000 sf | 2004 | 1 | $35,600 |

## ADDITIONAL INFORMATION

* The information listed below is not derived from the Property Appraiser's Office records. It is provided for convenience and is derived from other government agencies.

# MOTION FOR RELIEF
# EXHIBIT "D"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

IN RE:

JUAN M. GOMEZ ,                                    CASE NO.: 17-11733-JKO
                                                   CHAPTER 11

       Debtor(s).

_____/

**ORDER GRANTING CREDITOR'S MOTION TO CONFIRM NO STAY AS TO PROPERTY
LOCATED AT 13412 SW 83RD AVENUE, MIAMI, FL 33156 AS SUBJECT PROPERTY IS
NOT PROPERTY OF BANKRUPTCY ESTATE**
*Property Address: 13412 SW 83RD AVENUE, MIAMI, FL33156*

This case came before the Court on Creditor's, U.S. BANK N.A., AS TRUSTEE F/B/O

HOLDERS OF STRUCTURED ASSET MORTGAGE INVESTMENTS II INC., BEAR STEARNS

ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-3 ("**Creditor**"),

*Motion to Confirm No Stay as to Property Located at 13412 SW 83rd Avenue, Miami, FL 33156 as*

*Subject Property is Not Property of Bankruptcy Estate* [D.E. ____ ] filed _____ and the Court

having considered the Motion, and having been otherwise fully advised, it is:

**ORDERED:**

1.    Creditor's Motion to Confirm No Stay as to Property Located at 13412 SW 83rd Avenue,

Case No. «Field16»

Miami, FL 33156 as Subject Property is Not Property of Bankruptcy Estate is **GRANTED**.

2.    The Automatic Stay imposed by 11 U.S.C. §362 is lifted as to this Creditor its successors

and/or assignees, and the Creditor may proceed with foreclosure of its lien on the following property:

> **LOT 2, BLOCK 1, PINECREST OAKS, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 158, PAGE 52, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY FLORIDA.**
> **Property Address:** 13412 SW 83RD AVENUE, MIAMI, FL 33156

3.    This Order is entered for the sole purpose of allowing Creditor, its successors and/or

assignees, to obtain an *in rem* judgment against the property described above.  Creditor shall not seek an

*in personam* judgment against Debtor(s).

4.    The 14 day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001(a)(3) is

waived so that Creditor can pursue its *in rem* remedies.


Submitted by:

Mariam Zaki
SHD Legal Group P.A.
PO BOX 19519
Fort Lauderdale, FL 33318
***Attorneys for Creditor***

***Attorney for Creditor, Mariam Zaki, shall serve a copy of this Order upon all parties of interest and shall file a Certificate of Service in accordance with Local Rule 2002-1(F).***